### STRAUB v. CAMPBELL et al.

(Circuit Court of Appeals, Third Circuit. July 3, 1919.)

No. 2449.

PATENTS ⊚⟷328—VALIDITY AND INFRINGEMENT—BUILDING BLOCKS.

 The Straub patent, No. 1,212,840, for building block and method of making the same, the block being composed of a mixture of coarse and fine coal cinders and ashes, retaining all the original mass, cement, and water, discloses novelty and invention of a meritorious character; also *held* infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by Francis J. Straub against H. P. Campbell and Jacob Miller. Decree for defendants, and complainant appeals. Reversed.

Charles M. Clarke, of Pittsburgh, Pa. (R. A. & James Balph and Benj. H. Thompson, all of Pittsburgh, Pa., of counsel), for appellant.

T. Bertram Humphries, of Pittsburgh, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

BUFFINGTON, Circuit Judge. In the court below Francis J. Straub brought suit against H. P. Campbell and Jacob Miller, charging them with infringing patent No. 1,212,840, applied for November 9, 1915, and granted to him January 16, 1917, "for building block and method of making the same." A decree was taken pro confesso against Miller. On final hearing the court below held the patent in-

valid for lack of invention, and entered a decree that the patent was invalid, and that defendants did not infringe, and dismissed the bill. Thereupon Straub took this appeal.

In building operations the use has greatly increased of blocks prepared in advance and set in place, usually for interior walls, but often for exterior ones also. The advantage of their use is quite apparent from several practical standpoints. In the first place, walls made from them are soundproof, dampproof, fireproof, and are electrically nonconductors. Conduit openings can be made through them. Their considerable size enables walls to be built with less labor than if they were smaller. They can be built in large quantities in factories and transported with little breakage, thus saving operative space in the buildings as they progress. Their cheapness, their size, their form, the convenience in handling, together with other advantages, showed that the use of them was, and will be, a growing one in building operations.

Such blocks, prior to the patent in suit, were usually made of burned clay, or of concrete formed by a mixture of sand and cement. In some cases plaster of paris or lime was also used. Walls built of these structures were open to a very practical objection. As laths and wooden rails and other fixtures had to be nailed to the walls as the building advanced, and as nails could not be driven into these concrete blocks, or, if driven into blocks which contained plaster of paris or lime, would not hold, it was necessary that wooden strips should be inlaid or built in the wall as the blocks were laid. Into such strips the nails for the laths, etc., could be driven. Later, by reason of the trouble which was often caused by the block setter failing to build in such wooden strips, Straub's attention was called to the need of a building block into which a nail could be driven after the wall was built. For it was quite evident that, if such a block could be constructed, it would not only allow wooden strips to be nailed to the block after the wall was built, but it could be done at any place where it might afterward appear they were required. After many experimental efforts and some three years spent in trial, Straub at last made the block of the patent in suit.

The gist of his invention, for such we think it is, was in taking ordinary furnace ashes and using the whole of that product, without sifting or selection. He found that, by taking the whole of the ashes—clinkers, fine dust, and all—and grinding the entire product and mixing it with cement and water, he was able to produce a new and useful article in the building art. In the first place, it was new and so novel that, when the attention of a scientific journal was called to the possibility of its use, its reply was:

"We know of no manufacture of cinder concrete blocks, and see very little reason for their use. They might stand fire a little better than ordinary concrete blocks, *if the cinders were well selected and screened and all unburned coal removed;* but in any case the crushing strength would be lower than with a well-made concrete block."

From this it will be seen that in the minds of those versed in the art the possibility of a cinder concrete block was not recognized, even

when suggested; if they were used it was thought that the cinders had to be selected and screened, and that, if made, their crushing strength would be lower than that of concrete blocks. The practical results, however, of Straub's novel experiment, and the success of his block, are abundantly proved, not only by the exact copying thereof by infringers, but by the uncontradicted testimony of practical men in the art. Brown, a builder and contractor, testified as follows:

"I know Mr. Straub, the plaintiff, and am fairly familiar with his building block, and have used it in my business. It has features for building construction that I personally prefer over any other material in use. The cost is lower, and the material is practically fireproof and dampproof. I think those are the main reasons. It is a nonconductor of sound. I have noticed that, and heat and cold. I think you can secure a trim by driving nails into it. I can testify that nails hold very well in it, just as good as in wood. I have been in the contracting business for over 4 years, and before that in the bricklaying business for 25 years. In my travels I never saw a building block similar to the Straub block, and never heard of a cinder block until I saw Straub's block. It has made considerable of a reputation as a first-class article. I would pronounce it a first-class building material."

White, another contractor, testified:

"I know the Straub block, and have used it in building very extensively. I have found it superior to any other thing that has ever been got out. It has all the qualities of a hollow tile, and it is much better to nail to it, and there is not so much breakage in it. We don't have the percentage of loss that we do in other materials, and you can use it for putting the nailing blocks on the outside and nailing blocks on the inside. * * * When you put sand in the block, it becomes a dense, hard block. It will not give like a cinder block. That is the reason I use the Straub block entirely, where I have to timber up. Aside from the facility of driving nails into it and the expansibility of the block, it has the advantage over all clay products."

Murray, another contractor, says

"This Straub block is a cheaper construction than almost anything else in that line. It is cheaper, because it is made out of cinders, that practically cost nothing, and cement and water. * * * I never heard of a cinder block before I heard of Mr. Straub's. I have been in the building business for 25 years."

Strong, an architect, testified as follows, as to the Straub building block:

"I used it in place of hollow tile, because we liked it better. It was more soundproof; it was an economical thing to buy and to use; it represented a good mechanical bond for the mortar for plastering; it was not fragile. It would hold nails that were necessary to drive. It was also useful, in that it was possible to stick a pipe through the plastering without fracturing, as one has to do in the case of hollow tile."

The proofs also show that the demand for these blocks has been such that Straub was not able to fill them. Not only was the composition of the block novel, but the grinding of furnace cinders into the fine mixture required for Straub's blocks was so original that large and experienced firms which made lines of crushers could neither furnish nor suggest rolls suitable for the ash crushing which Straub required. He was, therefore, compelled to devise special rolls for that purpose,

and while these rolls are not a part of his patent, it will be noted that Straub made them, and Campbell, who here defends, made no blocks like Straub's until he copied Straub's crushing rolls. While the use of cinders in groutings, in foundations, in walks, roads, and other structures, was old, and while even screened ashes had been used in building blocks, no one before Straub conceived the novel idea of taking the whole ash product—clinkers and ash alike, half burned and wholly burned, lumps and dust—in fact, the entire run of the grate, and using the whole waste product in its raw state, rolling or grinding the whole mass. So novel was this joint use of the whole ash mass, in connection with cement and water, that the Patent Office granted to Straub the broad claim of:

"A building block composed of a mixture of coarse and fine coal cinders and ashes, retaining all the original mass, cement and water."

From this claim and a statement of the prior art, which Straub fairly stated in his patent,[1] and which we copy in the margin, it will be seen that the gist of Straub's invention is the use of cinders and ash as a whole, without screening or choice of any one or more of its parts. The product Straub gave in his building block is new in

[1] " Ordinarily, concrete mixtures of various kinds utilize sand, crushed stone, or other mineral as a body or filler, either wholly or partly in combination with the required proportion of cement as a binder. In carrying out my invention, I use coal cinders or ashes, which are first crushed or ground to a consistency composed of pieces not larger than say three-quarters of an inch, and retaining all of the smaller sizes and the dust and fine ashes, which are otherwise ordinarily thrown away as refuse. This crushed material, after reducing the larger lumps and clinkers, which are more or less porous, provides the coarser pieces or lumps of a maximum size sufficiently small to enable the cement to penetrate through their pores and interstices and bind the entire mass in a homogeneous body. The ground mixture also retains all of the usual accompanying adhering portions of the cinders in the resulting product, and it is essential that the original mass of cinders and ashes as it comes from the furnace, grate bars, or other source, remains in the resulting mixture without separation or change of proportions. A suitable proportion of cement, say one-sixth, is added with the necessary water, and the batch is then very thoroughly mixed. The retained finer cinder and ashes, combined with the cement, thoroughly mixes with the larger pieces, providing a uniform quality of all sizes throughout, and measured portions of the resulting mass are then dried. Owing to the absence of sand or other similar material, the resulting blocks, etc., harden by natural evaporation, and at the same time retain the porous light qualities of the original cinders to a very considerable degree, while at the same time having the necessary strength and resistance to crushing strains. The presence of the larger lumps regularly mixed throughout the mass maintain sufficient porosity to insure avoidance of moisture, while the light consistency of the entire body, and the avoidance of great density and accompanying resistance by elimination of sand or the like, leaves the block in a condition of penetrability or cleavage by any sharp instrument. It can therefore be driven into by a nail, or easily cut, without impairing its strength or homogeneity, so that it may be easily used for attachment of wooden trim, etc., without the necessity of supplemental nailing strips or the like. The surface, being rough and uneven, is likewise of great holding affinity for plaster or other like coating material, so that the blocks are well adapted to building purposes. They are fireproof, moisture proof, and soundproof, and, due to the low cost of the raw material and labor, are extremely cheap."

make-up and new in function, in that while, like the old block, it is proof against sound, water, fire, and electric current, Straub's has the wholly new feature of allowing a nail to be driven in it without breaking, and firmly holding the nail in place. It is light of weight, and cheaper than former blocks. It can be broken on nearly straight lines, and he offered to prove, and could presumably have done so, had the testimony been admitted, that the relative tensile strength of his cinder block to concrete block was as 846 to 691.

After full consideration of the proofs, we have reached the conclusion that Straub made a valuable contribution to the building art, that his patent is valid, and that Campbell is an infringer. Before Straub's block came on the market, Campbell had made blocks of sand and cement. He changed from that process and copied Straub's by making a block which used the entire ash body; the cinders and ash being crushed together on rolls of Straub's design. It is said he does not infringe, because he uses sand. Now, while it is clear that Straub uses no sand, and that his patent said none was to be used, and that sand is not an element of the claim quoted above, the weight of the proof shows us that Campbell uses the small amount of sand he does, not to make a building block that a nail cannot be driven into, not to make his block unlike Straub's, or to forego and avoid what Straub showed in his patent, but to really get the real thing Straub gave the building art, and escape paying tribute for such use by using a small and negligible quantity of sand. Campbell's infringing block does not make the block nailproof, as the sand and cement blocks he was previously manufacturing were; but one can drive nails into the infringing block, and the block holds the nails just as Straub first showed could be done. Taught by Straub, and copying and using his teachings in substantial and functional form, Campbell must be decreed an infringer.

The decree below will therefore be reversed, and the cause remanded, with instructions to reinstate the bill and enter decree holding this patent infringed, and directing an accounting.